FILED
2013 MAY 14 AM 10: 05
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____

FILED
CLERK, U.S. DISTRICT COURT
MAY 14 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 13 CR13-0333 |
| Plaintiff, | INFORMATION |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 982(a)(7): Criminal Forfeiture] |
| KIM CLARA RICKS, aka "Kim Ricks," | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1349]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

The Conspirators

1. Defendant KIM CLARA RICKS ("RICKS"), also known as "Kim Ricks," owned and operated a durable medical equipment ("DME") supply company under the fictitious business name "Kim's Medical Supplies" ("KMS"). KMS' offices were located at 24281 Sunnymead Boulevard, Moreno Valley, Riverside County, California, within the Central District of California. Defendant RICKS enrolled in the Medicare and Medi-Cal Programs ("Medicare" and "Medi-Cal,"

respectively) to become a Medicare and Medi-Cal provider, and later received Medicare and Medi-Cal provider numbers that allowed her to submit claims for reimbursement to both programs.

2. Co-conspirators and other individuals known as "marketers" solicited people who were eligible to receive Medicare and Medi-Cal benefits, who were known as "beneficiaries," to obtain DME and related services, including power wheelchairs ("PWCs"), that the beneficiaries did not want or need.

3. Co-conspirators wrote and signed prescriptions for the medically unnecessary PWCs, DME, and other related services, and services that KMS billed to Medicare and Medi-Cal.

4. Between in or around December 2005 and in or around September 2012, defendant RICKS and her co-conspirators caused KMS to submit claims to Medicare and Medi-Cal totaling approximately $655,318.06 for PWCs, DME, and other related services. KMS received approximately $245,542.70 on those claims.

The Medicare and Medi-Cal Programs

5. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled.

6. Medi-Cal was a health care benefit program, affecting commerce, that provided reimbursement for health care services to indigent persons in California. Funding for Medi-Cal was shared between the federal government and the State of California.

7. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United

States Department of Health and Human Services ("HHS"). CMS contracted with private insurance companies to (a) certify DME providers for participation in Medicare and monitor their compliance with Medicare standards; (b) process and pay claims; and (c) perform program safeguard functions, such as identifying and reviewing suspect claims.

8. The California Department of Health Care Services ("CAL-DHCS") administered Medi-Cal. CAL-DHCS authorized provider participation, determined beneficiary eligibility, issued Medi-Cal cards to beneficiaries, and promulgated regulations for the administration of the program.

9. Individuals who qualified for Medicare or Medi-Cal benefits were referred to as "beneficiaries."

10. Medicare assigned each Medicare beneficiary a Health Identification Card containing a unique identification number ("HICN").

11. DME companies, physicians, and other health care providers which provided medical services that were reimbursed by Medicare and Medi-Cal were referred to as Medicare and Medi-Cal "providers."

12. To obtain payment from Medicare and Medi-Cal, a DME company first had to apply for and obtain a Medicare or Medi-Cal provider number.

13. If Medicare or Medi-Cal approved a provider's application, Medicare or Medi-Cal assigned the provider a provider number, enabling the provider (such as a DME company) to submit claims to Medicare and Medi-Cal for services and supplies provided to Medicare or Medi-Cal beneficiaries.

14. Medicare and Medi-Cal reimbursed DME companies and other health care providers for medically-necessary treatment and services rendered to beneficiaries.

15. Most Medicare providers, including KMS, submitted their claims to Medicare electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

16. To obtain payment for services from Medi-Cal, an enrolled provider, such as KMS, using its provider number, would submit claims to Medi-Cal certifying that the information on the claim form was truthful and accurate and that the services provided were reasonable and necessary to the health of the Medi-Cal beneficiary.

17. Medicare had a co-payment requirement for DME. Medicare reimbursed providers 80% of the allowed amount of a DME claim and the beneficiary was ordinarily obligated to pay the remaining 20%.

B.  THE OBJECT OF THE CONSPIRACY

18. Beginning in or around December 2005, and continuing through in or around September 2012, in Riverside County, within the Central District of California, and elsewhere, defendant RICKS, together with others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

C.  THE MANNER AND MEANS OF THE CONSPIRACY

19. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.  Defendant RICKS and her co-conspirators would submit and cause the submission of false and fraudulent claims to Medicare and Medi-Cal for PWCs, DME, and other related services on behalf of beneficiaries who defendant RICKS knew did not have a legitimate medical need for the equipment.

b.  Defendant RICKS and her co-conspirators would submit and cause the submission of false and fraudulent claims to Medicare and Medi-Cal for PWCs, DME, and other related services that neither defendant RICKS nor her co-conspirators would deliver to KMS' purported customers.  In some cases, defendant RICKS and her co-conspirators would obtain the Medicare and Medi-Cal billing and personal information of beneficiaries and, without the beneficiaries' knowledge, would use that information to submit and cause the submission of false and fraudulent claims to Medicare and Medi-Cal for PWCs, DME, and other related services that neither defendant RICKS nor her co-conspirators provided to the beneficiaries.

## FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(7)]

20. The United States Attorney hereby realleges and incorporates by reference paragraphs one through nineteen of this Information as though fully set forth herein, for the purpose of alleging forfeiture, pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

21. Paragraphs one through nineteen of this Information allege acts or activities constituting federal health care fraud offenses pursuant to Title 18, United States Code, Sections 1347 and 1349. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of a federal health care fraud offense, defendant RICKS shall forfeit to the United States of America:

    a. All right, title, and interest in any property, real or personal, that constitutes, is traceable to, or is derived, directly or indirectly, from the gross proceeds of such offense; and/or

    b. A sum of money equal to the total amount of gross proceeds derived from such offense.

22. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), defendant RICKS, if so convicted, shall forfeit substitute property, up to the value of the amount described in paragraph twenty-one, if, by any act or omission of defendant RICKS, the property described in paragraph twenty-one, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a

has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

ANDRÉ BIROTTE JR.
United States Attorney

*/s/ R. E. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

RANEE KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GEJAA GOBENA
Co-Deputy Chief, Fraud Section
United States Department of Justice

BENTON CURTIS
Assistant Deputy Chief
Fraud Section
United States Department of Justice

JONATHAN T. BAUM
Trial Attorney, Fraud Section
United States Department of Justice